MacDONALD v. PERRY.

1. BILLS AND NOTES—INCORPORATION OF LETTER BY REFERENCE.
   A letter which was referred to in promissory note signed by defendants *held,* incorporated as a part of the note by reference.

2. APPEAL AND ERROR—FINDING OF TRIAL COURT—OFFICERS—CORPORATIONS.
   Finding of trial court that plaintiff in nonjury action on promissory note was an officer of company for benefit of which note had been given *held,* supported by the record.

3. BILLS AND NOTES—CONDITIONS INCORPORATED IN NOTE BY REFERENCE.
   Defendants were not liable on promissory note on which action by payee had been brought, where loan to plaintiff was only

REFERENCES FOR POINTS IN HEADNOTES
[1] See, generally, 7 Am Jur, Bills and Notes § 110.
[3] 7 Am Jur, Bills and Notes § 109.
[4, 6] 12 Am Jur, Contracts § 295 *et seq.*
[5] 12 Am Jur, Contracts § 296.

to be made if and when the corporation of which plaintiff was vice-president got out from under the hands of the trustee for the benefit of creditors and, the giving by the company to defendants of a first mortgage, where such conditions were stated in a letter which had been incorporated in the note by reference and were not fulfilled.

4. CONTRACTS—CONDITIONS—EQUITY.

Courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed, since such a construction prevents the court from dealing out justice to the parties according to the equities of the case.

5. SAME—CONDITIONS PRECEDENT—PERFORMANCE.

A condition precedent is a fact or event which the parties intend to exist or take place before there is a right to performance.

6. SAME—CONDITIONS—CONSTRUCTION OF CONTRACT.

Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract.

7. BILLS AND NOTES—CONDITIONS PRECEDENT—CONSTRUCTION—COMPLIANCE.

Meaning of condition of promissory note, as incorporated by reference from letter, that "I will forward to you upon * * * the proper execution and delivery of the note and mortgage for my protection" was clear and unmistakable, and where there was not compliance with the conditions, no liability attached.

Appeal from Muskegon; Beers (Henry L.), J. Submitted April 8, 1955. (Docket No. 51, Calendar No. 46,315.) Decided June 6, 1955.

Assumpsit by N. A. MacDonald against Virginia H. Perry and James F. Perry for sums claimed due on note. Judgment for defendants. Plaintiff appeals. Affirmed.

*Seymour, Seymour & Hughes* (*Dalton G. Seymour,* of counsel), for plaintiff.

*Hathaway, Latimer, Clink & Robb* (*Charles F. Latimer,* of counsel), for defendants.

REID, J. Plaintiff brought suit on a note signed by the defendants having conditions which plaintiff claims were not conditions precedent. The lawsuit was tried before the circuit judge without a jury. The trial judge found that the conditions were precedent to liability on the part of defendants and were unfulfilled, and the trial judge rendered judgment for the defendants. Plaintiff appeals.

The matters in controversy have relation to the affairs of Norman-Ross, Inc., a Michigan corporation, the articles of which corporation were filed with the State commission, June 28, 1946. Norman-Ross, Inc., was engaged in the business of selling phonograph records, radios, and television sets, and had one store in Grand Haven, Michigan, later a branch office in Grand Rapids, Michigan.

Plaintiff was an incorporator, director and original stockholder, originally holding 1/3 of the outstanding stock. After the incorporation, he purchased additional stock. His son, Norman A. MacDonald, Jr., was also an incorporator and holder of at least 1/3 of the outstanding stock. Plaintiff was vice-president. He claims that on January 15, 1950, he submitted his resignation by letter addressed to the company. Our attention is not directed to any showing in the record that the company accepted plaintiff's resignation as vice-president. His said son was president from the beginning of the operations of the company until it went out of business and was at all times the managing officer of the company. Plaintiff was in frequent communication with his said son on the affairs of the company.

In September, 1948, defendant James F. Perry became an employee on salary basis. He never became an officer or stockholder. He once offered to buy some stock and tendered $2,500 but the stock was not issued to him. He acted as clerk, office manager, waited on customers, dressed windows, ordered music records but not other merchandise without direct order of the managing officer, took care of the furnace, swept floors, and acted as manager of the Grand Haven store during temporary absences of the president, but never acted as general manager. He could not write checks on the company's account. His wife, codefendant Virginia H. Perry, was never associated with the company in any capacity.

The company being in financial difficulties on April 26, 1949, executed with consent of the stockholders to W. Alex Kennedy as trustee, a chattel mortgage of all the assets of the company, including future-acquired assets, to secure creditors having credits of a total approximate amount of $17,000. Plaintiff knew of the execution and existence of this chattel mortgage.

March 11, 1950, a letter signed by defendant Virginia H. Perry, in the preparation of which defendant James F. Perry participated, was sent to plaintiff and is as follows:

"1534 Clinton Street
Muskegon, Michigan
11, March 1950

"Mr. N. A. MacDonald
80 East Jackson Blvd.
Chicago, Ill.
"*Dear Mr. MacDonald*:

"As your son, Norman, has told you, I am one of the heirs of my aunt, Miss Helen Hume, Webster Avenue, Muskegon, Mich., who died several months ago. Her estate is being settled by the Michigan

Trust Company of Grands Rapids. Attached is copy of notice I received from the Trust Company, showing that probate proceedings are under way. How long it will take to settle the estate I have no way of knowing, nor do I know the exact amount I will receive, but Miss Hume's brother (my father) who attended to some of her affairs, and who should know, made the announcement to the heirs after the funeral and estimated that each share should run somewhat in excess of $20,000.

"After discussion with your son, N. A. MacDonald, Jr., and my husband, J. F. Perry, I have agreed to make a loan to the business of Norman-Ross, Inc., 201 Washington St., Grand Haven, Mich., in the amount of $8,500. As security, Norman-Ross, Inc., is to give me a note secured by first mortgage on all property and assets of the corporation, repayment to be made on a monthly basis over a 5-year period, with interest at 7% per annum.

"I cannot, of course, supply the money in question until after the estate has been settled. If you can arrange an interim financing for the $8,500, in order that the current trusteeship can be liquidated and the mortgage now held by the trustee relinquished, *I will forward to you upon receipt by me of my share of the estate above mentioned and the proper execution and delivery of the note and mortgage for my protection, the sum of $8,500.* (Italics supplied.)

> "Very truly yours,
> "VIRGINIA HUME, PERRY
> "(Mrs. JAMES F. PERRY)"

After the letter was sent to the plaintiff, plaintiff came (on or about March 14, 1950) to Grand Haven and had a talk with defendant James F. Perry and tendered to defendant James F. Perry "for execution," an unconditional promissory note, which defendant James F. Perry refused to even consider and threw away. Subsequently there was a meetin the office of Norman-Ross, Inc., in Grand

Haven, of Mr. MacDonald, Sr., and his said son, with defendant James F. Perry, at which plaintiff MacDonald produced a check for $8,500 payable to defendant Virginia H. Perry, requesting. that that check be placed in a special account in the Grand Haven bank, saying that he did not want it to be put into the Norman-Ross account for fear the trustee would impound it and apply it on the chattel mortgage. Plaintiff added the name of defendant James F. Perry to the check for $8,500 with the disjunctive "or," so that defendant James F. Perry could. indorse the check. Plaintiff and his son were very anxious to get a number of television and radio receivers out of the Michigan Express Company office that had been there a very considerable length of time. Plaintiff after adding the name of James F. Perry to the check, asked him to rush it over to the bank, open the account, and get a certified check for the amount necessary to get those instruments out of the Michigan Express Company—there was a "deadline" on them. Plaintiff instructed James F. Perry defendant to keep the $8,500 out of trustee Kennedy's hands and in a special account to carry on the affairs of Norman-Ross, Inc., and eventually "get the trust chattel mortgage by bringing in the necessary merchandise to carry on." A check for $2,700 dated March 17, 1950 was drawn to the trustee Kennedy. The remainder of the deposit of $8,500 was paid out for the benefit of Norman-Ross, Inc., to keep the business in operation and to pay for merchandise and bills of the corporation. The indorsements of W. Alexander Kennedy (the trustee), N. A. MacDonald, Jr., and James F. Perry appear on the reverse side of the checks which with the check for $2,700 to the trustee, total the $8,500. After the placing of $8,500 to credit of defendant James F. Perry in a special account as aforesaid,

and on or about March 14, 1950, defendants signed and delivered to plaintiff the note sued on which is as follows:

"$8,500.00                                14 March, 1950
Ninety days (90)......After date......promise to pay to the order of N. A. MacDonald eight thousand five hundred and no/100 Dollars at 80 East Jackson Blvd., Chicago, Ill. Value received. Payment to be made in accordance with the terms of my letter to you dated March 11, 1950. It is understood and agreed that the maturity date of this note will be extended if necessary until such time as the estate in question has been settled and my share thereof received.

"(s) VIRGINIA H. PERRY
"JAMES F. PERRY

"No ........Due..........
"Interest 4-1/2% per annum."

The note sued on has reference to the letter of March 11, 1950, and the letter by reference is part of the note.

Norman-Ross, Inc., went out of business about the latter part of February or first part of March, 1951. Neither of the defendants ever received any chattel mortgage on the assets of Norman-Ross, Inc. The estate of Helen Hume was settled in the latter part of the summer of 1951 after Norman-Ross, Inc., had gone out of business. In addition to the lien of the trust chattel mortgage there were liens against the assets of the company held by the State of Michigan and the Federal government for unpaid taxes. The company, Norman-Ross, Inc., made 2 interest payments of $85 each (one dated June 9, 1950 and the other, October 6, 1950) to plaintiff. This was interest on the $8,500. The payments were directed by plaintiff's son who was the president of the company.

The trial court concluded that at the time of the commitment by Virginia A. Perry of March 14, 1950, hereinbefore recited, plaintiff was vice-president of Norman-Ross, Inc. This conclusion is claimed by plaintiff to be erroneous. However, it is clear from the record that plaintiff at the time in question was ostensibly acting in a capacity as though he were still an officer of the company.

Plaintiff claims that the conditional note in question was not subject to conditions precedent to be performed by plaintiff.

Among other things the trial court found,

"It seems to me, from the evidence in this case, that the defendants certainly must have intended, and the plaintiff also understood, that in performing the so-called 'interim financing' by the execution of this note, the defendants would not become liable until the note and mortgage of Norman-Ross, Inc., had been duly executed and, of course, the trust mortgage discharged.

"This is clearly stated in the letter where it is said, 'I will forward to you upon receipt by me of my share of the estate above mentioned and the *proper execution and delivery of the note and mortgage* * * * [for] *my protection,* the sum of $8,500.' "

In the instant case, the defendants did not owe plaintiff anything and the loan was only to be made to the Norman-Ross company if and when the company got out from under the trustee's hands; the giving by the Norman-Ross company to defendants of a first mortgage, unquestionably was a condition precedent to defendants' advancing to plaintiff any money.

Plaintiff claims that there are ambiguities in the hereinbefore quoted letter dated March 11, 1950 that should be construed and resolved against the defendants because of the preparation of that letter by defendant James F. Perry.

Plaintiff cited *Knox* v. *Knox,* 337 Mich 109, in favor of the proposition that it is the law of Michigan that where the language of the note is such that there is a doubt whether the condition expressed therein is a condition precedent, the presumption is that the condition is not a condition precedent. We consider more complete and accurate statement to be that courts are disinclined to construe the stipulations of a contract as conditions precedent, unless compelled by the language of the contract plainly expressed. The reason of this disinclination is that such a construction prevents the court from dealing out justice to the parties according to the equities of the case. See p 119 of the *Knox Case.*

In the *Knox Case,* we say (syllabus 11):

"A condition precedent is a fact or event which the parties intend to exist or take place before there is a right to performance."

Also (syllabus 14):

"Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they excuted the contract."

We find there is no ambiguity in the words above italicized in the finding of the trial judge. The meaning is clear and unmistakable. The trial judge further found,

"It is my opinion that the conditions above quoted, that is, the discharge of the trust mortgage and the execution of a note and first mortgage by Norman-Ross, Inc., are conditions precedent of the liability of the defendants."

This ruling we affirm in view of the plain wording of the letter, highlighted by the circumstances. The conditions precedent were never complied with.

The trial judge entered judgment in favor of the defendants of no cause of action. That judgment is affirmed. Costs to defendants.

Carr, C. J., and Butzel, Smith, Sharpe, Boyles, Dethmers, and Kelly, JJ., concurred.