**Doris DORSEY, Plaintiff,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant.**

No. Civ.A. 97–40073.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 27, 1998.

Marcellus Long, Jr., Hatchett, Dewalt, Pontiac, MI, for plaintiff.

James E. Brenner, Clark Hill, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

This action involves a claim by plaintiff, Doris Dorsey, for $200,000 in life insurance proceeds from defendant United of Omaha Life Insurance Company.[1] Presently before this court is a motion for summary judgment filed by defendant. For the following reasons, defendant's motion will be granted and this case will be dismissed [2]

### FACTS

Garfield Dorsey and his wife, Doris Dorsey, visited Steven Jones, an alleged agent of defendant, seeking life insurance in the amount of $100,000 each. To that end, Garfield completed an Application for "Adult Life Insurance" dated February 3, 1995. (*See* Exhibit 1 to Brief in Support of Defendant's Motion for Summary Judgment).

Section B(2) of the Application asked whether Garfield Dorsey, during the 10 years preceding the date of application, had received medical care for a number of specific medical conditions including "chest pain," "[d]isease or disorder of the kidney, bladder, prostrate, or reproductive organs, or venereal disease," "[s]eizures, or convulsions, paralysis or stroke, or any mental, nervous, emotional, or brain disease or disorder," and "injury to the back." Garfield Dorsey answered "No" to every condition save one, asthma. Section B(4)(a) of the Application asked whether Garfield Dorsey, other than what he answered under Section B(2), during the five years preceding the date of application, had "[b]een examined by a medical practitioner or received medical care for any mental or physical disorder or bodily injury." Garfield Dorsey again answered, "No" to this inquiry. Section B(5) of the application asked Garfield Dorsey whether during the last 10 years, he or any person proposed for insurance had used drugs other than as prescribed, or been treated, or advised to be

treated, for alcohol or drug use. Yet again, Garfield Dorsey answered, "No." Section B(10) of the application asked, "Have you or any person proposed for insurance been convicted of a felony within the last 10 years," to which Garfield Dorsey replied "No."

At Section J(1) of the Application ("Agreements Section"), Garfield Dorsey agreed that:

> All answers in this application: (a) are true and complete to the best of my knowledge and belief and (b) will be relied on to determine insurability and (c) which contain an incorrect or misleading answer (material misrepresentation), may void the application effective the issue date.

He and his wife further acknowledged that:

> I have (a) read the Agreements Section and the receipt(s) and (b) read and approved the answers as recorded.

In addition to the Application described above, Garfield Dorsey and his wife also signed a Temporary Life Insurance Agreement bearing a date of January 17, 1995. The Temporary Life Insurance Agreement provided, in pertinent part, another question:

> 2. Within the past 3 years, has any Proposed Insured been treated for heart trouble, stroke, cancer, AIDS, drug or alcohol use, or had such treatment recommended by a physician or other medical practitioner?

Garfield Dorsey answered "No." The Temporary Agreement stated:

> **If [ ] the above question[] is answered "yes" or not answered, no agent of United is authorized to accept money with the application and no coverage will take effect under this Agreement....**

> \*   \*   \*   \*   \*   \*

> If the answer to [ ] the above question is "no" and the answer is incorrect or misleading, or if any of the answers to the questions on the application are incorrect or misleading, then this Agreement is void and never went into effect.

---

1. The defendant is incorrectly referred to by plaintiff's counsel in the case caption as "Mutual of Omaha Insurance Company."

2. Pursuant to Local Rule 7.1(e)(2), this court has decided to dispense with oral argument and decide the matter based on the parties written submissions.

(See Exhibit 2 to Brief in Support of Defendant's Motion for Summary Judgment).

On the Temporary Life Insurance Agreement, Garfield Dorsey acknowledged:

I have read and received a copy of this Agreement and understand and agree to all o its terms. I verify the above answers are true to the best of my knowledge and belief.

On February 7, 1995, during a health examination related to his application for life insurance, Garfield Dorsey encountered the same kinds of questions regarding his medical health that he encountered on the Application and on the Temporary Life Insurance Agreement. To those questions, he provided answers similar to the ones provided on the Application and the Temporary Life Insurance Agreement. Garfield Dorsey denied receiving any treatment for or indication of mental or nervous disorder within the past 10 years, denied having any mental or physical disorder within the past 5 years, denied receiving any checkup or consultation or illness within the past 5 years, denied having been admitted as a patient in any hospital or clinic or other medical facility within the past 5 years, denied using drugs except as prescribed by a physician and denied ever receiving or being advised to have counseling or treatment for drug use. After providing such statements to the examiner, Garfield Dorsey acknowledged:

[T]hat these statements are a part of my application for life insurance and that all statements and answers; (a) are complete and true to the best of my knowledge and belief; and (b) will be relied on to determine my insurability.

(See Exhibit 3 to Brief in Support of Defendant's Motion for Summary Judgment).

On March 1, 1995, Garfield Dorsey died. The Certificate of Death specifies the causes of death as "acute pulmonary thromboembolism" and "deep left leg vein thrombosis."

(See Exhibit 3 to Brief in Support of Defendant's Motion for Summary Judgment). Garfield's wife, Dorothy, thereafter sought benefits from the defendant.

In response to plaintiff's request for benefits, defendant sent plaintiff a letter dated March 3, 1995, which read as follows:

Dear Mrs. Dorsey:

We were sorry to learn of your husband's death and wish to extend our sincere sympathy.

As you know, you and your husband had recently applied for coverage through United of Omaha on February 3, 1995 and paid an initial premium of $26.60. At the time of your husband's death, the life insurance policy that was applied for had not been issued.

United will be conducting its claim investigation to determine if any benefits are payable. One of our representatives will be in contact with you within the next few weeks to obtain information concerning your husband's past medical history and to obtain your authorization which will enable United to complete its underwriting file and perform its claim investigation.

In the interim, we are enclosing our proof of death form. Please complete and sign the claimant statement and then have the doctor who treated your husband complete the physician's statement.[3] When the form is completed, please return it to this department along with a certified copy of the death certificate. The furnishing of this form does not constitute an admission of liability by our Company that any benefits will be payable.

A postage paid return envelope is enclosed for your use. If you have any questions, please let me know. I can be reached at (402) 351–2935.

Sincerely,

---

3. Plaintiff provided to defendant a signed statement dated March 20, 1995, acknowledging among other things:

... I am the spouse of Garfield Dorsey ...
I have known Garfield for approximately 13 years and he has never been treated for any injuries, major illnesses ...

He ... was never hospitalized. He was not on any medications and has never been on any medications ...
He was never convicted or arrested of any crimes...
... I have read this statement consisting of 3 pages and 58 lines and by my signature, I declare this statement is true and correct ...

Kathy Douglas
Life Claims Specialist
Individual Life Claims

(*See* Exhibit 4 to Brief in Support of Defendant's Motion for Summary Judgment).

In its claim investigation, defendant obtained various medical records of the decedent, Garfield Dorsey. These records uncovered an extensive medical history for *inter alia*, alcohol and drug abuse as well as mental illness. These records further revealed that the decedent had been hospitalized numerous times, mostly at Detroit Receiving Hospital and University Health Center ("Detroit Receiving"). In particular, the records revealed the following medical history of the decedent:

On February 1, 1993, decedent sought emergency treatment at Detroit Receiving for chest pain. The final impression upon discharge was noncardiac chest pain and cocaine abuse.

From March 26 – April 7, 1993, the decedent was an inpatient at Detroit Receiving due to depression, poor sleep, poor appetite, and hearing voices. He admitted abusing drugs and alcohol, but not for the past three weeks. The hospital report refers to the decedent's incarceration record and his long history of multiple psychiatric hospitalizations at facilities including Northville State Hospital, Detroit Osteopathic Hospital, Detroit Psychiatric Institute and Detroit Receiving.

On August 5, 1993, the decedent sought emergency treatment at Detroit Receiving because he was feeling depressed and suicidal. He admitted on-going substance abuse, including alcohol and cocaine. The diagnosis included schizo-affective disorder, as well as alcohol and cocaine dependency.

From November 3–18, 1993, decedent was an impatient at Detroit Receiving due to depression, poor sleep, poor appetite, hearing voices, and thoughts of harming self and others. His history showed multiple psychiatric hospitalizations, the last one at Westland Medical Center four months earlier. Decedent admitted the use of cocaine and alcohol. He was discharged to attend the Detroit Central City Community Mental Health Center and Narcotics Anonymous.

On December 13, 1993, the decedent sought emergency treatment at Detroit Receiving saying he thinks he wants to kill someone, he hears voices, he feels out of control, and he is on crack cocaine. Detroit Receiving recorded an impression of "Depression NOS and Alcohol and cocaine" and sent the decedent to Riverview Hospital for further evaluation and treatment.

On March 16, 1994, the decedent sought emergency treatment at Detroit Receiving for general psychiatric reasons, having recently used cocaine.

On April 2, 1994, the decedent sought emergency treatment at Detroit Receiving for suicidal ideation, homicidal ideation, and hallucinations, indicating that he had consumed 40 oz. of beer 5 hours earlier and $40 worth of cocaine the night prior. The diagnosis included psychotic disorder, NOS, alcohol abuse, and cocaine abuse. Detroit Receiving referred him to Mercy Hospital for treatment on an inpatient basis.

On April 3, 1994, Mercy Hospital admitted decedent to its closed psychiatric unit for daily psychiatric rounds, group therapy, activities therapy, occupational therapy, and Alcoholics Anonymous and Narcotics Anonymous meetings, as well as administration of various medications. Mercy Hospital discharged the decedent on April 7, 1994, with a diagnosis of: (1) adjustment disorder, mixed features; (2) psychotic disorder, not otherwise specified, acute symptoms resolved; (3) cocaine and alcohol abuse; (4) antisocial personality traits; and (5) urethritis.

On April 5, 1994, the decedent sought emergency treatment at Detroit Receiving for substance abuse, having ingested an uncertain amount of alcohol two days before and an uncertain amount of cocaine that day, and having hallucinations.

On July 31, 1994, the decedent sought emergency treatment at Detroit Receiving for low back strain. Those hospital records note a medical history of psychiatric illness, prescriptions of psychiatric medications, and a social history of cocaine use.

On July 6, 1994, the decedent sought emergency treatment at Detroit Receiving for genital lesions diagnosed as probably acute venereal warts.

On July 9, 1994, the decedent sought emergency treatment at Detroit Receiving, complaining of hearing voices and suicidal thoughts. The hospital records of that treatment reveal a history of alcohol, cocaine, heroin, and marijuana abuse with last recorded incident on April 16, 1994. The treatment plan on discharge included follow-up with Community Mental Health and participation in Alcoholics Anonymous and Narcotics Anonymous.

On August 2, 1994, the decedent was admitted to Detroit Receiving complaining of back pain. The final impression was low back strain. Noted in the social history of the emergency department record is cocaine use.

(*See* Exhibits 8–19 to Brief in Support of Defendant's Motion for Summary Judgment).

Not only did the defendant learn of the aforementioned medical history of the decedent in its claim investigation, it also learned of the decedent's criminal history which included convictions in 1981 for sexual assault and in 1984 for attempted breaking and entering.

After its investigation, defendant informed plaintiff by letter dated March 13, 1996 that it was denying her claim for benefits. Defendant refunded to plaintiff the initial premium payment of $26.60 which accompanied decedent's Application. In the letter denying benefits, defendant took the position that the only basis for plaintiff's claim would be the Temporary Insurance Agreement since the life insurance policy decedent applied for had not been issued.[4] Defendant further stated, however, that plaintiff's claim under the Temporary Insurance Agreement was being denied since the insurance company considered that Agreement void due to mis-representations the decedent made therein. The letter read in relevant part:

> During the course of our claim investigation, we found that Mr. Dorsey had been recommended for treatment in December, 1993 for drug and alcohol use. This information had not been disclosed on the Temporary Insurance Agreement. Specifically, question number 2 was not answered correctly. If we had known of his recommended prior treatment for drug use and alcohol use, as reflected in the medical records from Detroit Receiving Hospital and University Health Center, we would not have provided any temporary life insurance coverage during the pendency of his application.

(See Exhibit 20 to Brief in Support of Defendant's Motion for Summary Judgment).

After being denied life insurance proceeds by defendant, plaintiff filed this action in state court. Plaintiff alleged that defendant improperly denied her claim for benefits and sought proceeds in the amount of $200,000.[5] Defendant thereafter removed the action to this court. Currently the matter is before this court on defendant's motion for summary judgment.

## ANALYSIS

### Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89

---

4. According to the defendant, plaintiff's husband had expired so soon after he applied for coverage that defendant did not have the opportunity to complete its normal Home Office underwriting process.

5. On or about November 19, 1997, plaintiff filed a motion for leave to amend her complaint to add the alleged insurance agent, Steven Jones, as a defendant. The motion was referred to Magistrate Judge Carlson, who denied the same at a hearing on January 12, 1998.

L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir.1994).

### Defendant Is Entitled to Summary Judgment

Defendant insists that it is entitled to summary judgment as a matter of law on plaintiff's claim for insurance proceeds.[6] This court finds summary judgement for defendant appropriate in this instance.

First, the evidence is uncontroverted that no policy of insurance was ever issued to decedent. This is because the decedent died before defendant completed its underwriting process and before any policy of insurance had issued. (*See* Exhibits 4 and 20 to Brief in Support of Defendant's Motion for Summary Judgment). Thus, the only possible basis for plaintiff's claim would be the Temporary Insurance Agreement.

In regard to the Temporary Insurance Agreement, defendant maintains that there is no genuine issue of material fact as to the invalidity of the same. Defendant contends that it is uncontroverted that the Temporary Insurance Agreement never came into effect due to material misrepresentations decedent made on this Agreement concerning his medical history. *See* M.C.L.A. 500.2218 (insurer is entitled to avoid liability on an insurance policy where the insured made a material misrepresentation); *Wiedmayer v. Midland Mutual Life Ins. Co.*, 414 Mich. 369, 374, 324 N.W.2d 752 (1982) (same); *Howard v. Golden State Mutual Life Insurance Co.*, 60 Mich.App. 469, 477, 231 N.W.2d 655 (1975) (citations omitted), *lv. appeal denied*, 395 Mich. 762 (1975) (holding that in order to substantiate a claim of misrepresentation to avoid payment under M.C.L.A. 500.2218, the insurance company bears the burden of establishing the following three elements: (1) that a misrepresentation was in fact made; (2) that the insurer relied upon the statement; and, (3) that the misrepresentation was material to the risk and hazard accepted by the insurer). *See also Prudential Insurance Co. of America v. Cusick*, 369 Mich. 269, 291, 120 N.W.2d 1 (1963).

Defendant insists that it was a misrepresentation[7] decedent to answer "No" to Ques-

---

6. Plaintiff is seeking $200,000 under the insurance policy allegedly issued to the decedent by the defendant. Yet, the decedent only applied for a $100,000 policy. Thus, to the extent plaintiff has a claim for insurance, at all, the amount of that claim is limited to $100,000—the value of the alleged policy.

7. A "misrepresentation" is defined at M.C.L.A. 500.2218 as a false statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contrast as an inducement to the making thereof.

tion 2 of the Temporary Life Insurance Agreement. Question 2 asked decedent whether "within the past 3 years, [he had] been treated for ... drug or alcohol abuse." This court is of the opinion that decedent's answer was indeed a misrepresentation as a matter of law. Defendant has proffered unrefuted medical records establishing that on numerous occasions within the three years preceding the application date, and specifically on February 1 and August 4, 1993 as well as on March 16, April 2, April 3 and April 16, 1994, the decedent sought drug and/or alcohol treatment.

■ Defendant argues that the aforementioned misrepresentation is "material," and thus voids the Temporary Insurance Agreement. A misrepresentation is deemed "material" if it affected either the acceptance of the risk or the hazard assumed by the insurer. *Wiedmayer v. Midland Mutual Life Ins. Co.*, 414 Mich. 369, 374, 324 N.W.2d 752 (1982). In other words, a misrepresentation is "material" if the insured would not have issued the exact same policy had the true facts been revealed. *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785 (6th Cir.1997).

In this instance, the misrepresentations the decedent made concerning his health were certainly material. If the defendant had known decedent's true health condition, it would not have provided any temporary life insurance coverage during the pendency of decedent's application. (*See* Exhibits 20 and 21 to Brief In Support of Defendant's Motion for Summary Judgment).

■ In sum, this court finds that summary judgment must be granted to the defendant and plaintiff's claim must be dismissed. The evidence is uncontroverted that plaintiff's only claim for proceeds would be under the Temporary Insurance Policy since no policy was ever issued to plaintiff's husband. Furthermore, the evidence is unrefuted that plaintiff has no claim under the Temporary Insurance Policy since decedent made a material misrepresentation in that Policy, thus rendering it void as a matter of law.[8]

In opposition to defendant's motion for summary judgment, plaintiff asserts in her brief, which was filed very untimely,[9] that the misrepresentations in decedent's application for insurance were the result of the agent's actions, and that defendant is estopped from denying coverage. *Hughes v. John Hancock Mutual Life Ins. Co.*, 351 Mich. 302, 311, 88 N.W.2d 557 (1958) (holding that where essential medical facts are fairly disclosed by the applicant to the insurer's agent and the latter by unilateral mistake inserts erroneous or misleading answers in the application, the insurer will be taken as having received such disclosed information and be estopped from asserting that the answers were erroneous or misleading). Yet, plaintiff does not introduce any evidence whatsoever in support of these assertions. It is well-established that such naked, unsupported allegations are insufficient to create a genuine issue of material fact to defeat a summary judgment motion. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986).[10]

---

**8.** The same result would accrue under the common law of contracts. The Temporary Life Insurance Agreement expressly conditions temporary life insurance upon answers to the application questions being correct and not misleading. There is no question here that decedent's answers concerning his medical history were incorrect. Thus, an express condition precedent for temporary life insurance remaining unsatisfied, no temporary life insurance ever came into being. *MacDonald v. Perry*, 342 Mich. 578, 586, 70 N.W.2d 721 (1955) (defining a condition precedent, which is a fact or event which the parties intend to exist before there is a right to performance).

**9.** Plaintiff filed her brief in response to defendant's motion for summary judgment on December 29, 1997, approximately one month after the deadline for doing so had passed.

**10.** In her brief in opposition to defendant's motion for summary judgment, plaintiff intimates in her brief that defendant must show a causal relationship between the omitted information and the actual cause of death. This is a misstatement of the law. *Wickersham v. John Hancock Mutual Life Ins. Co.*, 413 Mich. 57, 318 N.W.2d 456 (1982).

Plaintiff also suggests that the focus of the case should be whether the proposed insured was in good health at the time of the application. This

In short, this court finds that defendant's motion for summary judgment must be granted for the reasons heretofore provided.

## ORDER

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is GRANTED and this case is dismissed with prejudice.

**SO ORDERED.**

too, is wrong. The focus of this case should not be on the decedents's state of health at the time he signed the application, but rather whether the decedent made material misrepresentations in his application for insurance.