NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0374n.06

**No. 20-1769**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DANIEL OGDEN KERBER; SHEILA KERBER,

    Plaintiffs-Appellants,

v.

WAYNE COUNTY EMPLOYEES RETIREMENT
SYSTEM; ROBERT GRDEN, individually and in
his official capacity as Director of Wayne County
Employees Retirement System; WAYNE COUNTY
AIRPORT AUTHORITY,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Aug 02, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

AMENDED OPINION

BEFORE: GIBBONS, COOK, and DONALD, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. This case arises out of Daniel Kerber's retirement from the Wayne County Airport Authority and the ensuing controversy over his pension benefits. As part of his severance agreement, Kerber was permitted to transfer from retirement Plan Five to Plan One, which afforded him a significantly more generous pension. In return, he was required to transfer all of the funds in his defined contribution account back into the retirement system. When he failed to make the requisite transfer, and instead withdrew the money for his own personal use, the retirement system alerted the Wayne County Prosecutors' Office, which brought charges. The retirement system then temporarily halted his pension payments without notice or a hearing. The system eventually reinitiated his payments at the Plan Five (pre-severance agreement) rates, but sharply reduced the amount to compensate the system for the overpayments Kerber had received through his Plan One payments. All criminal charges were eventually

dismissed by the Michigan Court of Appeals and Kerber brought this lawsuit alleging numerous federal and state claims against numerous defendants. The district court ultimately agreed with Kerber that he was entitled to a pre-deprivation hearing before the retirement system cut off his pension payments and subsequently reduced them. However, because the system accurately found that Kerber was not entitled to the enhanced Plan One payments and it was within its rights to reduce future Plan Five payments to compensate for past overpayments, the court granted Kerber only nominal damages of $1. Kerber appealed, arguing that (1) the district court erred in holding that he was not entitled to Plan One payments, (2) that he is entitled to punitive damages, and (3) that his remaining state law claims against his former employer and an individual employee of the retirement system should not have been dismissed. We affirm the district court's decision.

I.

Daniel Kerber was hired as the Deputy Director of Operations of the Wayne County Airport Authority ("WCAA") in 1985.[1] When he joined WCAA, he entered the Wayne County Employee Retirement Services ("WCERS") benefit program in Plan One, a purely defined benefit plan. Between 1985 and 2005, Kerber switched from Plan One to Plan Four and then to Plan Five. Plan Five was a "hybrid retirement plan," meaning it consisted of both defined contribution (401K) and defined benefit (pension) components. When he retired in 2009, Kerber signed a severance agreement with WCAA that allowed him to transfer back into Plan One, the defined benefit plan.[2] This agreement provided Kerber with significantly more generous retirement benefits ($11,337.48 per month compared to $6,056.38 per month), and in exchange the agreement stated that "the [WCAA] agrees to allow [Kerber] to transfer his Plan [Five] defined contribution pension assets

---

[1] Kerber was initially hired by Wayne County as the Deputy Director of Operations of Airports before WCAA was created as a political subdivision in 2002.

[2] According to the Deputy Director of WCERS, this option had never previously been offered to an employee.

to Plan [One.]" DE5-1, Severance Agreement, Page ID 190. Kerber further had to relinquish any future claim against WCAA, except to enforce the severance agreement, in consideration for the increased pension. Although WCERS did transfer Kerber's defined benefit assets of $475,000 to Plan One, it did not transfer the roughly $340,166 he held in his defined contribution account, the amount that the severance agreement stated he would transfer to Plan One. That amount "remained in [Kerber's] Plan [Five] defined-contribution account" at Prudential bank. DE5, Amended Compl., Page ID 147, 155.

Over a year later (during which time Kerber was receiving regular monthly pension payments at the heightened Plan One amount), Kerber contacted Prudential and requested a distribution of the funds in his old Plan Five defined contribution account. Following protocol, Prudential contacted WCERS, and a WCERS employee "reviewed and approved" the distribution. Prudential withheld taxes and sent Kerber a check for $277,431.40, the entire amount in his defined contribution account.

When Robert Grden, the Executive Director of WCERS, learned that Kerber may have failed to make the transfer of his defined contribution assets but was receiving Plan One benefits, and indeed had received a distribution of the funds he had agreed to transfer, he directed WCERS employee Kelly Tapper to review Kerber's file. Tapper informed Grden that she believed that Kerber had violated the severance agreement by failing to transfer his defined contribution funds, and Grden reported the issue, which he believed to be fraudulent, to the Wayne County Prosecutor's Office ("WCPO"). The WCPO investigated the matter, asking two WCERS employees how they interpreted the language of the severance agreement, to which the employees responded that they believed Kerber was required to transfer his Plan Five funds in order to be eligible to receive Plan One pension distributions. In August 2015, while the WCPO investigation

was ongoing, WCERS temporarily halted Kerber's pension payments without giving him notice or holding a hearing.

The WCPO charged Kerber with larceny by conversion and false pretenses for the disbursement of the roughly $277,000 of his Plan Five defined contribution funds. These charges were eventually dismissed after being heard by the Michigan Court of Appeals twice. The WCPO again charged Kerber, this time with larceny and larceny by conversion for accepting the monthly Plan One pension. The charges were again dismissed.

In October 2016, Kerber (through his attorney) requested that WCERS reinstate his pension. WCERS denied the request and informed Kerber that he could appeal the denial and request a formal hearing before the retirement commission. Kerber again requested reinstatement in June, noting that all criminal charges against him had been dismissed. In November, Kerber informed WCERS that he would be formally appealing and requested a hearing. This hearing took place on January 30, 2017, and the commission voted to deny his appeal in a closed session. In October 2018 WCERS met again to determine how to proceed with regard to Kerber's pension. WCERS's counsel advised WCERS that Kerber had failed to satisfy the condition precedent in the severance agreement (i.e., the transfer of his defined contribution funds) and therefore had never been entitled to Plan One distributions. WCERS accepted this recommendation and decided to reinitiate Kerber's Plan Five pension disbursements ($6,056.38 per month), but to decrease the payment to compensate the system for the prior overpayments.

In June 2018, Kerber and his wife, Sheila Kerber, sued numerous defendants on numerous counts in federal court.[3] As defendants he named WCERS, its Executive Director Robert Grden,

---

[3] In August 2018, Kerber amended his complaint. He later moved to amend his complaint a second time in order to add First Amendment claims against WCPO, but that motion was denied and the first amended complaint is operative. Kerber does not appeal the denial of his motion to amend.

4

Division Director of Information Services Kelly Tapper, WCAA, WCPO, and individual prosecutors Anthony Domek, Kym Worthy, and Robert Donaldson.

In Count One, Kerber sought a declaratory judgment that WCPO, the individual prosecutors, and the two WCERS employees had violated his constitutional rights and the reinstatement of his pension benefits. Count Two sought an injunction against impairing or diminishing his benefits. Count Three alleged deprivation of property without due process under § 1983 against WCPO, the individual prosecutors, WCERS, and the two WCERS employees. Count Four alleged arrest without probable cause under § 1983 against Domek. Count Five alleged municipal liability under § 1983 against WCPO for deprivation of his rightful benefits. Count Six was a false arrest claim against Domek. Counts Seven and Nine were § 1983 claims for prosecution without probable cause. Count Eight was a malicious prosecution claim against Tapper and the three individual prosecutors. Count Ten was a defamation claim against Worthy. Count Eleven alleged impairment or diminution of pension benefits in violation of the Michigan Constitution against all defendants. Count Twelve alleged that WCAA tortiously interfered with Kerber's benefits. Count Thirteen alleged intentional infliction of emotional distress against all defendants. Finally, Count Fourteen, brought by Kerber's wife Sheila Kerber, alleged loss of consortium against all defendants.

Kerber moved for a preliminary injunction and a show cause order as to why his pension benefits should not be restored, which the district court denied. WCAA moved to dismiss the charges against it under Federal Rule of Civil Procedure 12(b)(6), arguing that Kerber had failed to show that WCAA had exercised any control over WCERS and its decision to terminate his benefits. WCAA also argued that, as a governmental agency, it is immune from tort liability. The district court granted this motion, first noting that the only counts "that seem[ed] to pertain to

WCAA" were the diminution of Kerber's pension benefits in violation of the Michigan constitution and tortious interference. DE47, Order re. WCAA, Page ID 1640. The court went on to explain that the relevant portion of the Michigan constitution does not create a cause of action, and Kerber had failed to demonstrate that "WCAA took any action to cause an interference with Mr. Kerber's relationship to WCERS or to instigate [WCERS] to breach its contract." *Id.* at Page ID 1643.) The claims against WCAA were thus dismissed.

WCPO and the individual prosecutors also moved to dismiss under Rule 12(b)(6), and the district court granted the motion, dismissing the claims against WCPO, Domek, Worthy, and Donaldson.[4]

WCERS and Robert Grden, and separately Kelly Tapper (the only remaining defendants), also moved to dismiss.[5] The court denied this motion in part and granted it in part. The court held that it did not owe WCERS's decision any administrative deference because it had not produced any administrative record. Nonetheless, WCERS was correct that the language of the contract clearly stated that, because Kerber failed to transfer the defined contribution assets as required by the contract, he had no entitlement to Plan One pension benefits. Kerber did, however, have an entitlement to his Plan Five benefits, and had a right to "be heard in a meaningful time and in a meaningful manner" before WCERS reduced those benefits. DE50, Order re. WCERS and WCPO, Page ID 1697. The court therefore denied the WCERS defendants' motions to dismiss as to Kerber's § 1983 claim for deprivation of property without due process of law. This left Kerber with one due process deprivation claim against WCERS, Grden, and Tapper and state law claims

---

[4] Kerber does not appeal this order.

[5] Both parties brought their motions under Federal Rule 12(b)(1), which governs the court's jurisdiction. The district court, however, correctly stated that because the parties were actually arguing that Kerber had failed to state a claim, the motions were more properly decided under Rule 12(b)(6).

against Grden. The parties stipulated to dismissal of all claims against Tapper, leaving only WCERS and Grden as defendants.

WCERS and Grden moved for summary judgment. Because the court had already determined that Kerber had no legitimate interest in his enhanced pension, and because WCERS was within its rights to recoup the previous overpayments, WCERS and Grden asserted that the only remaining question was whether Kerber received adequate process. WCERS and Grden, of course, argued that he had. The district court disagreed, holding that WCERS deprived Kerber of due process by failing to offer a pre-deprivation hearing. Because, however, Kerber was in fact not entitled to the enhanced pension, and WCERS was correct that it had the right to recoup overpayments, the court granted Kerber only nominal damages of $1.[6] The court also held that Grden was entitled to governmental immunity for all of Kerber's remaining state law claims because Grden had reasonably believed that he was acting pursuant to his job. For the reasons described below, we affirm the district court's disposition as to all of Kerber's claims.

II.

There are three main issues before us on appeal. First, Kerber appeals the award of $1 in nominal damages on the § 1983 denial of due process claim against WCERS and Grden (Count Three). Second, he appeals the state law intentional infliction of emotional distress claim asserted against Grden (Count Thirteen), and his wife appeals the state law loss of consortium claim asserted against Grden (Count Fourteen). Kerber argues that the district court erred in holding that Grden was entitled to governmental immunity under Michigan law for these claims. Third, he

---

[6] In this order, the district court did not rely solely on the contractual language, but provided three additional state law justifications: (1) WCAA had failed to conduct a study "of the long term effects of the pension as required by MCL 38.1132," (2) WCAA and Kerber failed to provide WCERS with a copy of the severance agreement, and (3) "no labor group had been offered a similar option to transfer into [Plan 1], as required by MCL 46.12a." DE83, Order re. Summ. J., Page ID 2756−57. Kerber did not brief these issues on appeal, and they are not necessary to our determination.

appeals the district court's dismissal of Count Twelve against WCAA for tortious interference with a contract.

## A.

### i.

We first hold that the district court was correct in determining that Kerber was only entitled to Plan Five benefits, and thus only nominal damages. The district court addressed the interpretation of Kerber's severance agreement in its orders regarding both WCERS's and Grden's initial motion to dismiss under 12(b)(6) and their subsequent motion for summary judgment. The proper interpretation of the agreement is a question of law that we review de novo. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016); *Hunt v. Sycamore Cnty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) ("The standard of review for summary judgment is de novo"); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) ("Questions of contract interpretation, including those that form the basis for the grant of summary judgment, are subject to de novo review.") Per the choice of law clause, the severance agreement is governed by Michigan law.

### ii.

Kerber sued WCERS for cutting off, and subsequently reducing, his pension payments and the district court agreed that he had stated a claim for a due process violation because WCERS had failed to provide him with a constitutionally adequate pre-deprivation hearing.[7] The parties do not appeal this ruling. The court went on to analyze the contractual language to determine whether

---

[7] Before addressing the merits, the district court held that it did not owe WCERS any deference because the agency had not provided a record on which its decision was based or explained its reasoning. The district court was correct. We must affirm an agency's finding that is "substantially supported in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). WCERS reached its decision regarding Kerber in a closed session and details of its decision process are not in the record before us. We cannot give deference to an administrative record that we do not have.

Kerber was entitled to Plan One benefits or only Plan Five benefits. If he was entitled to Plan One benefits, then he would have suffered a significant harm: the diminution of his rightful benefits over a period of several years. If, however, he had not fulfilled his side of the agreement, then he had at no point been entitled to the enhanced benefits and the amount of his harm was much less. WCERS would have reduced Kerber's benefits to recoup the overpayments even if he had been granted a constitutionally adequate procedure.

The severance agreement includes the following language: "Except in the event of revocation by Employee under paragraph 7 of this Agreement, the Authority agrees to allow Employee to transfer his Plan 5 defined contribution pension assets to Plan 1, and elect Plan 1 as his retirement plan."[8] DE5-1, Severance Agreement, Page ID 190.

The district court held that:

> The contractual language is clear on its face. Mr. Kerber had the option of transferring his Plan Five defined contribution assets to Plan One and collecting a pension under Plan One. He did not transfer those assets, and so he has no legitimate entitlement, under the severance contract, to a pension from those defined contribution assets that he withdrew from the fund.

DE50, Order re. WCERS and WCPO, Page ID 1695. The court held that because the transfer of Kerber's defined contribution assets to Plan One was a condition precedent that he had failed to meet, WCAA was under no obligation to pay him Plan One benefits.

Kerber argues that this clause was not a condition precedent because the phrase "agrees to allow" in the severance agreement is permissive. In the alternative, he argues either that the

---

[8] During the criminal case against Kerber, the Michigan Court of Appeals interpreted this language as permissive, meaning that it did not require a transfer of the funds in order to qualify for Plan One benefits. *People v. Kerber*, No. 340663, 2018 WL 2222845, at * 5 (Mich. Ct. App. May 15, 2018). It appears that this holding was premised in large part on Tapper's testimony during the course of that case that it was in fact impossible to make the transfer described by the agreement. *Id.* As noted below, that testimony by Tapper is not in the record before us. The Michigan court also reached this holding in relation to the criminal larceny charges against Kerber, and it supported their holding that even if Kerber was not entitled to Plan One benefits, he could not steal money to which he held title. *Id.* at *5−6. That case was unpublished and therefore is at most persuasive. *Woodring v. Phoenix Ins. Co.*, 923 N.W.2d 607, 610 (Mich. Ct. App. 2018).

condition was factually impossible for him to meet or that WCERS waived the condition by placing him into Plan One and continuing to make Plan One payments despite his failure to meet the condition. WCERS and Grden respond that the language clearly created a condition precedent and that Kerber failed to produce any evidence that the condition was impossible.

A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. If the condition does not occur and is not excused, the promised performance need not be rendered." *Condition Precedent*, Black's Law Dictionary (11th ed. 2019). In essence, it is a condition that both parties expect to be met before there is a right to performance. *MacDonald v. Perry*, 70 N.W.2d 721, 725 (Mich. 1955). The language in the severance agreement clearly conditioned Kerber's entitlement to Plan One benefits on the transfer of his defined contribution assets. He is correct that "agrees to allow" is permissive, but that simply means that the entire paragraph is permissive. He is allowed to transfer the funds *and* elect Plan One. He could choose to do neither, but if he elects Plan One, he must transfer the requisite funds. The parties' intent is clear; Kerber was purchasing a significantly more lucrative pension, not receiving one for free. *See Sikkema v. Pro. Benefits Servs., Inc.*, No. 352295, 2020 WL 6940787, at *4 (Mich. Ct. App. Nov. 24, 2020) (per curiam), *appeal denied*, 957 N.W.2d 774 (mem.) (Mich. Apr. 27, 2021).

Kerber has also failed to create a question of material fact as to the impossibility of performance of the contract. Kerber cites testimony by Tapper in the course of the since-dismissed criminal case against him, but that testimony is nowhere in the record. There is only a very limited transcript in the record of the preliminary examination from which the relevant quotes allegedly came, and none of it includes the quoted language that "[y]ou can't transfer plan five assets to plan one." CA6 R.38, Appellant's Br., at xiii; *see also* DE52, Day 2 Preliminary Exam Transcript.

10

Without any genuine question as to the impossibility of performance in the record, WCERS and Grden are entitled to summary judgment on the issue.

Nor did WCERS waive the condition through its actions. A party "cannot avoid liability on [a] contract for the failure of a condition precedent where [it] caused the failure of the condition." *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007). Under Michigan law, to waive a condition, a "party must prevent the condition from occurring by either taking some affirmative action, or by refusing to take action required under the contract." *Id.* at 589. An example of waiver would be requiring an appraisal and then refusing to meet with the appraiser. *Id.* No one disputes that WCERS failed to transfer the funds to Plan One at the time that the agreement was signed, but a failure to act is neither an affirmative action nor a refusal to act. By failing to timely transfer the funds, WCERS was not placing an "obstacle in the way of the" condition. *Mehling v. Evening News Ass'n*, 132 N.W.2d 25, 26 (Mich. 1965) (quoting *Hayes v. Beyer*, 278 N.W. 764, 766 (Mich. 1938)). Further, Kerber withdrew the funds from Prudential, rendering it impossible for WCERS to successfully transfer the funds when it learned of the error.

The transfer of Kerber's defined contribution assets was clearly a condition precedent on which his eligibility for Plan One benefits depended. Though WCERS made a serious error in failing to timely transfer the funds, it did not waive the condition. The district court did not, therefore, err in holding that Kerber was never entitled to the enhanced Plan One benefits and WCERS was within its rights to reduce his disbursements to recoup the overpayments. As he was not entitled to compensatory damages, the award of $1 in nominal damages was not an abuse of discretion.[9]

---

[9] Kerber argues on appeal that WCERS's recoupment was limited to two years of overpayments by Wayne Country Ordinance Title VI § 141-41, which appears to apply to administrative errors on the part of WCERS. He did not raise this argument in his response to WCER's motion for summary judgment, and only very briefly alluded to it during the motion hearing. **(*See* DE87, Mot. Hr'g Tr., Page ID 2771.)** Further, this allusion was made primarily during the

B.

i.

Kerber next argues that, compensatory damages aside, he is entitled to punitive damages for WCERS's termination of his benefits. As with our review above, we review this decision regarding damages for abuse of discretion. *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 517 (6th Cir. 2009) (per curiam). "A court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (quoting *Phelan v. Bell*, 8 F.3d 369, 372 (6th Cir. 1993)).

ii.

Kerber's argument rests primarily on the fact that WCERS owed him a fiduciary duty as a member of the system but failed to communicate with him before stopping his benefit payments. WCERS and Grden respond that punitive damages are only available if Kerber "can demonstrate that [they] acted with malicious or reckless disregard of [Kerber's] constitutional rights." CA6 R.41, WCERS and Grden Appellee Br., at 44.

WCERS and Grden are correct. Whether Kerber is entitled to punitive damages does not hinge on WCERS's status as a fiduciary, but rather on whether WCERS was "motivated by evil motive or intent," or acted with "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Kerber has submitted no evidence that WCERS acted with evil intent. The record reflects that WCERS cut off his pension in August 2015after Grden became concerned that Kerber's failure to transfer the defined contribution funds

---

court's discussion of settlement, not the merits of the motion. Because he failed to brief the issue, did not raise it in any detail during the motion hearing, and the district court did not rule on it, Kerber has forfeited the argument before us. *Frazier v. Jenkins*, 770 F.3d 485, 497 (6th Cir. 2014).

constituted fraud. Grden testified that the WCPO had instructed him not to communicate with Kerber due to their ongoing investigation. The district court correctly pointed out that this may have been negligent on WCERS's and Grden's part, but there is no indication that it was reckless, evil, or malicious. When WCERS eventually did grant Kerber a hearing, it allowed his attorney to submit written materials and argue in person on his behalf. Then, acting on the advice of its legal counsel, WCERS determined that it had been overpaying Kerber and that it was obligated to reduce further payments to recoup its losses. Nothing in this account of WCERS's deliberations, or of Grden's decision-making, suggests malicious intent.

Because Kerber has failed to create a genuine dispute as to WCERS and Grden's malicious intent, we affirm the district court's denial of punitive damages.

C.

i.

The district court granted Grden's motion for summary judgment on Kerber's two state claims, holding that he was entitled to governmental immunity under Michigan law. Kerber appeals. We review a grant of summary judgment de novo. *Hunt*, 542 F.3d at 534. The court must view "all the evidence in the light most favorable to the nonmoving party and draw[] 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

ii.

In its order on WCERS and Grden's summary judgment motion, the district court held that Grden was entitled to governmental immunity under Michigan law for Kerber's state law claims against him. Kerber argues that this was an error because Grden could not have reasonably believed that he was acting in the course of his employment when he cut off Kerber's benefits.

13

He argues that the existence of fraud and the termination of benefits are entirely separate issues, and Grden was aware of this.

Michigan law extends governmental immunity to individuals whose challenged acts were "undertaken in good faith . . . during the course of employment" when "the employee was acting, or reasonably believed he was acting, within the scope of his authority." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 218 (Mich. 2008). The question is, therefore, whether Grden reasonably believed he was acting within the scope of his authority, even knowing now that it was incorrect for him to terminate Kerber's benefits without adequate process. Grden testified that he believed that the evidence suggested Kerber was fraudulently receiving enhanced pension benefits. He reported the potential fraud to the WCPO, and then terminated the benefits without providing notice because he was "not allowed to contact Mr. Kerber after" meeting with the WCPO. DE76-2, Grden Dep. Tr., Page ID 2395. He was the Executive Director of the Wayne County Employees Retirement System. It was clearly within his authority and job description to protect the system against fraud. Whether he was correct as to the legal sufficiency of the process that he afforded Kerber is not the question, but rather whether he reasonably believed that he was acting within the scope of his authority. *See* Mich. Comp. Laws § 691.1407. His deposition makes clear that he believed that the system was incorrectly overpaying Kerber, and that he reported the issue to WCPO and terminated the benefits to protect the integrity of the system. The district court already made clear that the termination of Kerber's benefits without due process was unconstitutional, so we need not discuss that issue again here. We agree with the district court that Grden was entitled to governmental immunity because Kerber has provided no evidence that Grden did not reasonably believe that he was acting within the scope of his authority.

D.

i.

Kerber's final argument is that the district court erred in granting WCAA's motion to dismiss under Rule 12(b)(6) for failure to state a claim. In reviewing a motion to dismiss, we must "accept all well-pleaded factual allegations as true," and "examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Solo*, 819 F.3d at 793 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

ii.

The only claim against WCAA relevant on appeal is Count Fourteen for Tortious Interference with a Contract.[10] The district court granted WCAA's motion to dismiss, holding that Kerber had failed to state a claim that WCAA "took any action to cause an interference with Mr. Kerber's relationship to WCERS." DE47, Order re. WCAA, Page ID 1643. WCAA did not cause WCERS to suspend Kerber's pension, and it continued to make payments to Kerber until WCERS suspended the pension. The district court rejected Kerber's argument that WCAA is liable for WCERS' "alleged wrongdoing" through its ratification of or acquiescence in WCERS' suspension of his benefits.

Kerber argues that because WCAA was a party to the severance agreement, it had the authority (and duty) to ensure that the agreement was carried out. WCAA responds first that it is entitled to governmental immunity and, second, that Kerber cannot sustain a claim for tortious interference without alleging an affirmative act.

---

[10] Kerber initially included WCAA in Count Eleven under the Michigan Constitution for impairment or diminution of his retirement benefits, but the district court held that that constitutional provision does not create a cause of action and Kerber does not appeal this holding.

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc*, 706 N.W.2d 843, 848–49 (Mich. 2005). To sustain a claim for tortious interference, "the plaintiff must establish that the defendant was 'a third party' to the contract rather than an agent of one of the parties." *Lawsuit Fin., L.L.C. v. Curry*, 683 N.W.2d 233, 241 (Mich. Ct. App. 2004) (quoting *Reed v. Mich. Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993)). WCAA is not a third party to the severance agreement, it was a signatory to the agreement. WCERS is a third party. Under Michigan law, therefore, WCAA is not a proper defendant to a tortious interference claim under these circumstances.

Regardless, the district court was correct that Kerber cannot sustain a claim for tortious interference where he alleges only inaction on the part of WCAA. "[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984). Kerber does not allege a per se wrongful act, but rather a failure to ensure that WCERS carried out the intent of the agreement.

Because he does not allege a per se wrongful act, Kerber must "demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Knight Enters., Inc. v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) (quoting *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005)). His complaint did not do so, alleging only that "[WCAA] intentionally and improperly ceased making payments to WCERS" and "caused a disruption and/or termination of the business expectancy or relationship between [Kerber and

WCERS].” DE5, Amended Compl., Page ID 182−32. This is not an allegation of an affirmative action, particularly because (as the district court noted) WCAA did not cease payments until WCERS had terminated his benefits. Kerber argues that “[b]y staying silent regarding [Tapper's incorrect] interpretation [of the severance agreement], WCAA gave tacit approval to the unconstitutional actions of WCERS that followed.” CA6 R.38, Appellant's Br., at 28. “Tacit approval” is not an affirmative act. An affirmative act is when “the defendant ‘unjustifiably instigated or induced’ the party to breach its contract.” *Knight Enters.*, 829 N.W.2d at 348 (quoting *Derosia v. Austin*, 321 N.W.2d 760, 762 (Mich. Ct. App. 1982)). WCAA took no action that induced WCERS to terminate Kerber's pension benefits. Furthermore, WCERS was not party to the severance agreement and therefore did not “breach its contract” with Kerber.

Finally, Kerber argues that the district court dismissed his claim against WCAA before he had engaged in the discovery necessary to find evidence of his allegations. WCAA correctly points out, however, that the correct action for Kerber to take would be to move to amend his complaint against WCAA to reflect this newly discovered evidence, which he failed to do. Kerber did move to amend his complaint following the dismissal of WCAA, but it was only to add claims and factual allegations against WCERS and Grden, not WCAA. Because he never raised this issue before the district court, he has forfeited it before us. *Frazier*, 770 F.3d at 497.

III.

We affirm the district court's award of $1 in nominal damages because, although WCERS did violate Kerber's constitutional right to due process by failing to provide him with an adequate pre-deprivation hearing, this failure did not ultimately lead to the diminution of his pension benefits. Rather, Kerber failed to meet his end of the bargain in the severance agreement and thus was not entitled to the enhanced pension benefits that he was receiving under Plan One. Moreover,

because he did not demonstrate that WCERS acted with evil or malicious intent, he was not entitled to punitive damages. Finally, the district court correctly dismissed his claims against Grden because of governmental immunity and against WCAA for failure to state claim.