**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0102n.06

**Nos. 07-1491, 08-1581**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 17, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| B.A. CONSTRUCTION AND MANAGEMENT, INC.; and B.A. REAL ESTATE, LLC, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| KNIGHT ENTERPRISES, INC., | ) ) | |
| Defendant-Appellant. | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| B.A. CONSTRUCTION AND MANAGEMENT, INC.; and B.A. REAL ESTATE, LLC, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| KNIGHT ENTERPRISES, INC., | ) ) | |
| Defendant-Appellee. | ) ) ) | |

BEFORE: GRIFFIN and KETHLEDGE, Circuit Judges, and CARR, District Judge.[*]

GRIFFIN, Circuit Judge.

---

[*]The Honorable James G. Carr, Chief Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

Defendant Knight Enterprises, Inc. ("Knight") appeals the district court's April 11, 2006, order granting plaintiff B.A. Construction and Management, Inc. ("BA Construction") and plaintiff B.A. Real Estate, LLC ("BA Real Estate") (collectively "plaintiffs") summary judgment on the issue of liability.[1] Knight challenges the district court's finding that it breached the terms of the parties' agreements without justification and violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq*. Plaintiffs challenge the district court's order denying their motion for exemplary damages and attorneys' fees against Knight for its violation of the PMPA. For the reasons set forth below, we reverse in part and affirm in part the district court's order granting plaintiffs' motion for summary judgment. Because we reverse in part, we dismiss as moot plaintiffs' appeal of the district court's order denying their motion for exemplary damages and attorneys' fees.

I.

In January 2004, plaintiffs and Belal Abdallah, President of BA Construction and BA Real Estate, entered into an Improvement Agreement (the "Improvement Agreement") and a Motor Fuel Franchise Agreement (the "Franchise Agreement"), whereby Knight agreed to sell to plaintiffs, and plaintiffs agreed to purchase from Knight, Citgo Petroleum Corporation ("Citgo") branded petroleum products. During negotiations, Knight maintains that Abdallah informed Knight that his gas station historically sold 125,000 gallons of gasoline per month. Based on Abdallah's representation, Knight

---

[1]In addition to the April 11, 2006, opinion, Knight's Notice of Appeal states that it also appeals the district court's July 12, 2006, order regarding Knight's counterclaim, and the district court's November 20, 2006, order denying Knight's motion for reconsideration of the April 11, 2006, opinion.

worked out an arrangement with Citgo, whereby Citgo would reimburse Knight $130,000 over time if plaintiffs purchased a minimum of 125,000 gallons of gasoline every month for a period of ten years. In turn, Knight agreed to pay plaintiffs a $130,000 "up front" signing bonus upon: (1) formal acceptance of plaintiffs' retail outlet[2] by Citgo; and (2) Knight's approval of plaintiffs' retail plans and designs for the retail outlet. These terms were placed in the Franchise Agreement and the Improvement Agreement.

The Franchise Agreement states, in pertinent part:

2.   Term

The term of this Agreement shall be for Ten (10) years . . . . The Term of this Agreement shall be *automatically extended* until DEALER purchases the total gallons required in this Agreement.

3.   Supply of Motor Vehicle Fuel

3.1.   Purchase of Supply. DEALER agrees to purchase from KNIGHT . . . one hundred percent (100%) of DEALER'S requirements of motor fuels sold . . . . DEALER further agrees that one hundred percent (100%) of its total requirements shall not be less than One Hundred Twenty Five Thousand (125,000) gallons of motor fuels for each month during the term hereof. The total gallons of Motor Fuel required under this Agreement will be [12,000,000].

\* \* \*

25.   No rebate on fuel will be paid during the term of the contract, however an up front cash *signing bonus* will be paid by Knight Enterprises, Inc. to the dealer of an amount of One Hundred Thirty Thousand ($130,000.00) dollars issued *upon the formal acceptance* of the branded station by the major oil company.

---

[2]The term "retail outlet" is defined in the Improvement Agreement as "the real property located at . . . 1727 Southfield Road, Lincoln Park, MI 48146," the location of plaintiffs' gas station.

(Emphasis added.)

The Improvement Agreement states, in pertinent part:

2.     <u>IMPROVEMENTS</u>. KNIGHT agrees to provide the following described equipment and improvements or cash to be used to purchase improvements (collectively the "Improvements") on the Property at an agreed upon value of [$152,000].

    Detail of Improvements
KNIGHT will provide an ID Price Sign, Image Dispensers & Canopy and paint poles and curbs = Twenty Two Thousand Dollars ($22,000) [and a] *Signing Bonus* of One Hundred Thirty Thousand Dollars ($130,000).

\* \* \*

3.     <u>PAYMENT</u>. Subject to the terms hereof, DEALER shall reimburse KNIGHT for the Value of the Improvements; provided, however, DEALER *shall not be obligated to reimburse* KNIGHT for the Value of the Improvements *so long as* during the Term, DEALER purchased for and delivered to the Retail Outlet the total requirement of [12,000,000 gallons] of KNIGHT supplied motor fuel (the "Volume").

\* \* \*

7.     <u>APPROVALS.</u>

A.     KNIGHT'S *obligations* and *performance* hereunder *are subject to its approval of the plans and designs for the Retail Outlet* . . . . DEALER and KNIGHT acknowledge and agree that KNIGHT'S review and approval of plans and designs are *primarily* for the purpose of ensuring that the appearance of the Retail Outlet at which KNIGHT'S petroleum products will be sold and It's [sic] Supplier's trademark and brand names displayed will maintain the integrity and value of such trademark or brand names.

(Emphasis added.)

Plaintiffs and Knight also executed a Line of Credit Agreement ("Credit Agreement") and mortgage for the property on which the gas station was located in order to secure plaintiffs' obligations under the Credit Agreement. The line of credit was in the amount of two loads of gasoline ("back loads").[3] Knight maintains that plaintiffs were required to pay it for the first back load of gasoline upon delivery of the third load of gasoline. Plaintiffs never had more than two unpaid loads of gasoline outstanding at any one time. Knight alleges, however, that plaintiffs violated the "payment terms contained in the [Franchise] Agreement" on February 13, 2004, February 26, 2004, and March 9, 2004, when they wrote checks to Knight that were returned due to insufficient funds.

Between March 13, 2004, and May 17, 2004, plaintiffs did not purchase gasoline from Knight. During this time period, Knight alleges that plaintiffs bought gasoline from other suppliers.[4] According to Carroll Knight, Knight again sold motor fuel to plaintiffs on May 17, 21, and 26, 2004. After May 26, 2004, plaintiffs stopped ordering fuel and allegedly continued to buy fuel from other suppliers.[5] On April 6, 2004, Charles Roehl, an attorney for Knight, sent plaintiffs a letter

---

[3]Knight also maintains that it agreed to advance plaintiffs $30,000 with the "understanding and agreement" that plaintiffs would reimburse Knight "in the event Citgo did not formally accept plaintiffs' premises as a branded station."

[4]Carroll Knight, President of Knight, maintains that he observed plaintiffs unloading unauthorized gasoline into their tanks.

[5]Plaintiffs informed Knight in a March 26, 2004, letter that they would "procure product from other sources."

terminating the Franchise Agreement. On September 2, 2004, Knight foreclosed on the property that is the subject of this lawsuit.

On October 5, 2004, plaintiffs brought an eight count complaint, requesting injunctive relief and alleging a violation of the PMPA, breach of contract, and promissory estoppel.[6] On October 14, 2005, plaintiffs moved for partial summary judgment against Knight for liability and sought to have the foreclosure sale set aside in its entirety. Plaintiffs argued that Knight breached the Franchise Agreement and Improvement Agreement by failing to pay the signing bonus. Moreover, plaintiffs contended that Knight did not comply with §§ 2802 and 2804 of the PMPA, because Knight did not give proper notice of cancellation, termination, and/or non-renewal of the Franchise Agreement and Improvement Agreement when they refused to sell motor fuel to plaintiffs. Finally, plaintiffs averred that the mortgage was void.

On April 11, 2006, the district court granted plaintiffs' motion for summary judgment as to liability, set aside the foreclosure sale, and scheduled a trial date for the issue of damages. In granting the motion for summary judgment, the district court found that Knight was liable to plaintiffs for violating the PMPA and for breach of contract. Additionally, the district court found

---

[6]Count I: Violation of the Federal Petroleum Marketing Practices Act
Count II: Breach of Contract of the Improvement Agreement
Count III: Breach of Contract of the Motor Fuel Franchise Agreement
Count IV: Injunctive Relief
Count V: Injunctive Relief
Count VI: Injunctive Relief
Count VII: Injunctive Relief
Count VIII: Promissory Estoppel

that plaintiffs had no liability to Knight, which rendered the mortgage void. The district court subsequently issued an order dated July 12, 2006, ruling that it would not consider any motions regarding Knight's counterclaim.[7]

The district court conducted a jury trial on March 13, 2007, and March 14, 2007. Prior to trial, the parties held a telephone conference with the district court in which it was determined that the trial would be limited to determining any additional monetary damages that plaintiffs suffered as a result of Knight's breach of contract and violation of the PMPA, and that plaintiffs' claims for exemplary damages and reasonable attorneys' fees under the PMPA would be brought in a post-trial motion. At the trial, the jury found that plaintiffs had not suffered any additional damages as a result of Knight's actions, and therefore, despite Knight's liability, the jury did not award damages.

On May 22, 2007, plaintiffs filed their motion for exemplary damages and attorneys' fees. On July 30, 2007, Magistrate Judge Virginia Morgan conducted a hearing on plaintiffs' motion. Magistrate Judge Morgan subsequently issued an October 2, 2007, report and recommendation ("R&R") that plaintiffs' motion for exemplary damages and attorneys' fees be denied as untimely, or alternatively, on the merits. On April 1, 2008, the district court issued an opinion adopting in part Magistrate Morgan's recommendation and denying plaintiffs' request for exemplary damages and attorneys' fees.

---

[7]After reviewing Knight's counterclaim, the district court concluded that the issues included in the counterclaim related to damages, "the same damage issues to be presented at a jury trial on [plaintiffs'] claims, and [were] thus intertwined with Plaintiff's [sic] damages request, and [Knight's] responses to those damage claims."

Knight filed a timely notice of appeal on April 10, 2007, appealing the district court's grant of summary judgment in favor of plaintiffs on the issue of liability. On April 29, 2008, plaintiffs filed a timely notice of appeal regarding the district court's April 1, 2008, order denying their motion for exemplary damages and attorneys' fees.

II.

We review de novo the district court's order granting or denying summary judgment. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

III.

The law is clearly settled in Michigan that a "condition precedent is a fact or event which the parties intend to exist or take place before there is a right to performance." *MacDonald v. Perry*, 70 N.W.2d 721, 725 (Mich. 1955) (internal citations and quotations marks omitted); *see also Archambo v. Lawyers Title Ins. Corp.*, 646 N.W.2d 170, 176 (Mich. 2002) ("A 'condition precedent' is a condition that must be met by one party before the other party is obligated to perform[.]"). "When

attempting to discern the parties' intent, we construe together contemporaneous documents relating to the same transaction." *Tomecek v. Bavas*, 759 N.W.2d 178, 184 (Mich. 2008) (footnote omitted). Here, both the Improvement Agreement and the Franchise Agreement reference the signing bonus, and both were executed on January 13, 2004. Therefore, the district court should have construed the terms regarding the signing bonus in each document as one contract.

In so doing, the district court would have correctly found that there were two conditions precedent that had to be satisfied before Knight was obligated to tender the $130,000 signing bonus: (1) plaintiffs' station needed to be formally approved by a major oil supplier; and (2) plaintiffs' station's plans and designs needed Knight's approval. Indeed, the parties do not dispute that both conditions needed to be satisfied in order for plaintiffs to receive the signing bonus. In plaintiffs' appellate brief, they expressly "acknowledge that pursuant to the Improvement Agreement, in addition to CITGO's formal acceptance of the Retail Outlet, there was a second condition precedent to the payment of the signing bonus, Knight had to approve the 'plans and designs' for the Retail Outlet[.]"

Here, the district court examined the first condition precedent, and properly concluded that plaintiffs had received Citgo approval on March 16, 2004.[8] Relying on this determination alone, the district court found that plaintiffs had satisfied all necessary requirements for receiving the signing bonus. Accordingly, the district court held that Knight's refusal to tender the remaining amount of

---

[8]The affidavit of Robert Franczkowski, a Citgo Sales Manager, and a letter from Franczkowski stating that the branding has been completed, support the district court's finding that the station was branded on March 16, 2004.

the signing bonus owed to plaintiffs on March 16, 2004, was a breach of the agreements between the parties. It is not clear, however, that Knight violated the parties' agreements on March 16, 2004, because the district court failed to analyze the second condition precedent, i.e., that Knight had to approve the "plans and designs" for the retail outlet.

The parties' arguments regarding liability are dependant on which party was first to substantially breach their agreements. "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994) (internal citation and quotation marks omitted). "However, that rule only applies when the initial breach is substantial." *Id.* at 707. "[A] 'substantial breach' is one 'where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party.'" *Chrysler Int'l Corp. v. Cherokee Export Co.*, 134 F.3d 738, 742 (6th Cir. 1998) (quoting *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (1964)).

Here, Knight argues that plaintiffs were the first to substantially breach the parties' agreements when they allegedly: (1) failed to purchase their monthly minimums of 125,000 gallons of motor fuel; (2) failed to exclusively purchase motor fuel from Knight; and (3) failed to pay for delivered shipments of motor fuel beyond the initial two back loads extended on credit. Plaintiffs, relying on the district court's ruling, argue that Knight was the first party to commit a substantial

breach when it failed to tender the remaining amount of the signing bonus owed to plaintiffs on March 16, 2004.

On appeal, plaintiffs ask this court to review the record and determine that either the second condition precedent was satisfied on or before March 16, 2004, when Citgo formally accepted the retail outlet, or decide that Knight acted unreasonably in not approving plaintiffs' plans and designs. Plaintiffs argue that Knight's approval of the plans and designs was conditioned solely on Citgo's formal acceptance of the gas station. They note that paragraph 7(A) of the Improvement Agreement states:

> KNIGHT'S review and approval of plans and designs are primarily for the purpose of ensuring that the appearance of the Retail Outlet at which KNIGHT'S petroleum products will be sold and It's [sic] Supplier's trademark and brand names displayed will maintain the integrity and value of such trademark or brand names.

Paragraph 7(A), however, specifically states that Knight's review and approval is "primarily," not exclusively, to ensure that its supplier's (presumably, but not necessarily, Citgo's) trademarks and brand names are properly displayed. The use of "primarily" instead of exclusively implies that there may be other reasons, beyond satisfying Citgo, that explain why Knight wanted to review and approve plaintiffs' plans.

Plaintiffs did not provide the district court or this court with any document, affidavit, or other evidence indicating that Knight received or approved its plans and designs. Instead, plaintiffs ask this court to review the record and make a factual determination in its favor based on their arguments and conjecture. In deciding a motion for summary judgment, however, we view the factual evidence and draw all reasonable inferences in favor of the nonmoving party, here, Knight. *Keweenaw Bay*

*Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007). Viewing the facts in a light most favorable to Knight, there are genuine issues of material fact regarding: (1) whether plaintiffs satisfied the second condition precedent; and (2) which party was first to substantially breach the parties' agreements. As such, these issues must be resolved by the trier of fact, and not by this court reviewing plaintiffs' motion for summary judgment. Accordingly, we reverse in part the district court's order granting plaintiffs' motion for summary judgment on the issue of liability, and remand for further proceedings consistent with this opinion.

IV.

Knight next argues that plaintiffs were not entitled to summary judgment because the Franchise Agreement was voidable due to plaintiffs' fraudulent representation that they had historically sold 125,000 gallons of motor fuel each month. Fraud can occur when a party makes open, false assertions. *Hord v. Envtl. Research Inst.*, 617 N.W.2d 543, 550 (Mich. 2000). To prove fraud, Knight must demonstrate the following:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*City of Novi v. Robert Adell Children's Funded Trust*, 701 N.W.2d 144, 152 n.8 (Mich. 2005); *see also Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Nernberg v. Pearce*, 35 F.3d 247,

249-50 (6th Cir. 1994) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 815-16

(Mich. 1976). Contracts induced by fraud are voidable at the option of the defrauded party.

*Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995).

The district court considered Knight's allegation of fraud and dismissed it. However, the

reasoning behind its decision is flawed. The district court stated:

> The requirement that Plaintiffs purchase 125,000 gallons of gas per month, the
> requirement that Plaintiff [sic] purchase [twelve] million gallons of fuel over ten
> years, and Defendant's agreement to pay the signing bonus, were all based on
> Plaintiffs' representation. However, Defendant's failure to pay entire [sic] signing
> bonus adversely impacted Plaintiff's [sic] ability to buy the necessary monthly
> amount of gas and adequately market itself to increase consumer consumption.
> Therefore, viewing the facts in a light most favorable to Defendant, there is no
> genuine issue of material fact whether the contracts were voidable due to Plaintiffs'
> fraudulent misrepresentations.

Yet, Carroll Knight stated in his affidavit that plaintiffs represented that they had "*historically* sold

125,000 gallons per month[.]" (Emphasis added.) Clearly, the amount of gas plaintiffs may be able

to sell in the *future* from receiving the entire signing bonus would not affect the amount of gas they

*historically* sold before the Franchise Agreement was signed.

Nevertheless, Knight has failed to establish a prima facie case of fraud. Knight supports its

allegation of fraud solely with the affidavit and testimony of Carroll Knight, who states that plaintiffs

represented to him "that the gas station that is the subject matter of this lawsuit historically sold

125,000 gallons per month[.]" No evidence was presented by Knight to the district court that

showed plaintiffs' alleged representation was false, i.e., that the gas station did not historically sell

125,000 gallons of motor fuel.

"[F]raud must be pleaded with particularity, and is not to be lightly presumed, but must be clearly proved, by clear, satisfactory and convincing evidence[.]" *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 451 (Mich. 2008) (internal citations and quotation marks omitted). Here, Knight was required to present facts to support all elements of its fraud claim and has failed to do so by not showing that plaintiffs presented false information. Accordingly, the district court correctly determined that plaintiffs were entitled to summary judgment on Knight's fraud claim.

V.

For these reasons, we affirm in part, and reverse in part, the judgment of the district court and remand for further proceedings consistent with this opinion. In view of our disposition, we dismiss as moot plaintiffs' appeal of the order denying their motion for exemplary damages and attorneys' fees.

**KETHLEDGE, Circuit Judge, concurring in the judgment.** As the court observes, BA Construction concedes on appeal that Knight's obligation to pay the $130,000 signing bonus had two conditions precedent rather than one. But for that concession, I would have read the contract the same way the district court did.

Additionally, although the court does not decide the issue, I would hold that BA Construction did not substantially breach the contract until March 26, 2004. That is the date when BA Construction informed Knight that it would no longer purchase fuel from Knight. This was a total repudiation of BA Construction's obligation to purchase fuel form Knight, and therefore constitutes a complete failure of consideration. *See Chrysler Int'l Corp. v. Cherokee Export Co.*, 134 F.3d 738, 743 (6th Cir. 1998) (finding a substantial breach when a party's conduct frustrated the "essential purpose of the contract").

The other alleged breaches were not substantial. Instead, they were slight deviations from the contract's terms, for which the parties provided specific remedies in the contract. *See* Improvement Agreement ¶5(A) (Knight was owed roughly 2 cents per gallon for each gallon below the minimum that BA Construction did not purchase); Franchise Agreement ¶3.2(D) (imposing a 1% fee on all checks returned for insufficient funds); Franchise Agreement ¶3.3 (imposing a 2 cents per gallon penalty for gas purchased from a different supplier). A party cannot argue that a relatively minor breach warrants rescission, particularly when it can invoke alternative remedies that it previously agreed were sufficient. *See Harris v. Chain Store Realty Bond & Mortg. Corp.*, 45

N.W.2d 5, 9 (Mich. 1950) ("When two competent parties, through a process of give and take, reach an agreement it can be presumed that the mutual promises were considered adequate").

I would therefore find that BA Construction's only substantial breach occurred on March 26, 2004. On remand, the sole issue for determining liability would be whether Knight approved the plans and designs for the station before that date. If so, then Knight was the first to substantially breach by failing to pay the signing bonus, and is therefore not entitled to recover. If not, then BA Construction was the first to substantially breach, and Knight may proceed on its counterclaim.

Finally, I would reach the merits of BA Construction's motion for exemplary damages and attorneys' fees. That motion is based on BA Construction's Petroleum Marketing Practices Act (PMPA) claim, on which the district court entered summary judgment in favor of BA Construction. Knight does not appeal the resolution of the PMPA claim, so nothing in our decision today affects—and future proceedings in this case will not affect—BA Construction's entitlement to relief on that claim. I believe that the issues are therefore ripe for our review.

As to the merits, I would affirm the district court's denial of the motion because it was untimely. Regarding exemplary damages, the district court properly construed the motion as one to alter or amend the judgment. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175-76 (1989) (a postjudgment motion for discretionary relief that depends on the merits of plaintiff's claim is considered a motion to alter or amend the judgment). The deadline for such a motion is 10 days after judgment, Fed. R. Civ. P. 59(e), and this is a deadline courts lack authority to extend. Fed. R. Civ.

P. 6(b)(2). Here, judgment was entered on March 14, 2007, but BA Construction did not file its motion until May 21, 2007. The request for exemplary damages was therefore untimely.

The deadline for filing a motion for attorneys' fees is within 14 days of the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). May 21, 2007 was well after this deadline, but BA Construction argues that the time should have been extended due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The district court did not find excusable neglect, a decision we review for an abuse of discretion. *See Allen v. Murph*, 194 F.3d 722, 724 (6th Cir. 1999).

BA Construction asserts that there was excusable neglect because it was improper for the district court to issue judgment and close the case. But regardless of the propriety of closing the case, BA Construction was on notice that the court had done so; and BA Construction could have filed a motion within the proper time. The district court did not abuse its discretion in finding that BA Construction's carelessness was not excusable. *See id.* at 724 (upholding the denial of excusable neglect based on "the carelessness of the[] attorneys in allowing the 14-day period to run"). I would therefore affirm the district court's denial of BA Construction's motion for exemplary damages and attorneys' fees.